**UNITED STATES of America, Appellant,**

v.

**TWENTIETH CENTURY–FOX FILM CORPORATION, a Corporation, Appellee.**

No. 14831.

United States Court of Appeals Ninth Circuit.

June 29, 1956.

H. Brian Holland, Asst. Atty. Gen., Harry Marselli, Karl Schmeidler, Ellis N. Slack, Robert N. Anderson, Special Asst. to Atty. Gen., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Bruce I. Hochman, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Loeb & Loeb, Donald T. Rosenfeld, Alan E. Susman, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and FOLEY, District Judge.

FOLEY, District Judge.

The question upon this appeal is whether appellee is liable for federal transportation tax under § 3469, Internal

Revenue Code of 1939, 26 U.S.C.A. § 3469, imposing a tax on transportation of persons.

Appellant's statement of the case which was accepted by the appellee and which is in harmony with the Court's findings is as follows:

During the period October 1, 1946, to August 1, 1949, taxpayer employed Paul Mantz Air Services, hereinafter referred to as "Mantz," to furnish airplanes with pilots to enable taxpayer's employees to photograph from the air various scenes in the production of motion pictures and to enable them to discover or examine from the air locations on the ground suitable for the production of motion pictures. When an airplane was used to photograph scenes from the air, the only person or persons in the airplane in addition to the pilot were taxpayer's cameramen engaged in such photography. When an airplane was used to discover or examine locations, the only persons in the airplane in addition to the pilot were taxpayer's employees who were directly concerned with the suitability of locations for the production of a particular motion picture, such as the producer, director, assistant director, production manager, art director and cameraman.

The charges, as to which the transportation taxes in dispute were paid, involved flights by airplanes under the following circumstances:

(a) Taxpayer engaged Mantz in connection with a sequence in the motion picture entitled "Sand," relating to a search by air for a valuable horse following his escape from a railroad car after a train wreck. Mantz furnished a model L–1–E airplane and pilot. The pilot flew alone in the airplane from Burbank, California, to Durango, Colorado, the scene of the motion picture company on location. At Durango taxpayer's cameraman entered the airplane and thereafter he took pictures from the air of the surrounding ground terrain and also of the horse. The cameraman left the plane at Durango and the pilot returned alone in the airplane to Burbank.

The flight by the pilot alone in the airplane from Burbank to Durango and return to Burbank took approximately 16 hours. The flying time consumed by the cameraman in aerial photography was approximately 7 hours and 35 minutes. Mantz charged the taxpayer $1,325 for this flight. The charge was on an hourly basis without regard to whether any of taxpayer's employees were aboard the airplane.

(b) In connection with taxpayer's production of the motion picture, "Chicken Every Sunday," Mantz furnished taxpayer the same model L–1–E airplane and a pilot to carry taxpayer's cameraman to enable him to photograph from the air pictures of airplanes on the ground. The pilot flew alone from Burbank to Carson City, Nevada, where the cameraman entered the airplane. The pilot returned alone in the airplane to Burbank.

The total flying time was 10 hours and 35 minutes. Approximately 9 hours of the total elapsed time was consumed going to and returning from Carson City. Mantz charged taxpayer $750 for this flight. The charge was on an hourly basis without regard to whether any of taxpayer's employees were aboard the airplane.

(c) In connection with taxpayer's production of the motion picture, "Twelve O'Clock High," Mantz furnished taxpayer a model B–25 airplane and pilot to carry taxpayer's cameraman to enable him to photograph from the air pictures of other airplanes in flight. Mantz charged taxpayer $3,100 for this flight. The charge was on an hourly basis without regard to whether any of taxpayer's employees were aboard the airplane.

(d) In connection with taxpayer's production of the motion picture, "Willie Comes Marching Home," taxpayer desired to photograph a scene wherein an airplane would fly in one end of an airplane hangar, through the hangar, and out the other end. In order to find a hangar suitable for such purposes, Mantz furnished taxpayer a BT–13 airplane and pilot to carry taxpayer's cameraman. The pilot and the cameraman examined

from the air hangars at three different airfields and made practice approaches at one hangar to be sure there were no obstacles at either end of the hangar to such a flight.

Mantz charged taxpayer $103.75 for this flight. This charge was based upon a total of 415 miles flown and at the rate of 25 cents per mile without regard to whether any of taxpayer's employees were aboard the airplane.

(e) In connection with taxpayer's production of the motion picture, "Yellow Skies," Mantz furnished taxpayer with a Cessna aircraft and pilot to carry taxpayer's employees to enable them to examine from the air possible ground locations suitable for photographing the production of this picture. Taxpayer's employees aboard the airplane for this purpose were the picture's producer, director, art director and cameraman, all of whose duties were directly related to the discovery and examination of locations as a possible site in the production of this motion picture.

Mantz charged taxpayer $75 for this flight. This charge was based upon an hourly rate and was without regard to whether any of taxpayer's employees were aboard the airplane.

(f) In connection with taxpayer's production of the motion picture, "Captain From Castile," Mantz furnished taxpayer with a DC–3 aircraft and pilot to carry taxpayer's employees to enable them to examine from the air possible ground locations in Mexico suitable for photographing various scenes in the production of this picture. Taxpayer's employees aboard the plane were the producer, director, assistant director, production manager, art director and cameraman, all of whose duties were directly related to the discovery and examination of locations as possible sites in the picture's production.

Mantz charged taxpayer $96 for this flight, which payment was without regard to whether any of taxpayer's employees were aboard the airplane.

Mantz collected from taxpayer $817.55 in transportation taxes, as provided by § 3469(a), for the above flights and paid this amount to the Collector of Internal Revenue for the Sixth California District. Taxpayer subsequently filed with the Collector a claim for refund of the taxes paid by it to Mantz. Following the Commissioner's rejection of its claim, taxpayer brought this action in the District Court below.

Smith v. United States, D.C.Fla.1953, 110 F.Supp. 892, was cited by appellee as the only case upon the meaning of "transportation of persons" as used in § 3469. The reason for the Court's holding in the Smith case that the operation there under consideration was not transportation upon which a tax may be imposed under § 3469 is not made clear in the opinion and likewise, we are uninformed of the basis of the holding of the Court below—no opinion having been filed.

Appellee disclaims that it was contended in the District Court that the movements in this case did not constitute transportation because taxpayer's employees were picked up and discharged at the same point. Accompanying this disclaimer appellee makes what appears to be an inconsistent statement: "What we contend is that these flights did not constitute transportation within the meaning of Section 3469(a) because appellee's employees did not travel to go, or to go and come back from anywhere, that is, they had no destination as such."

The language of § 3469 clearly imposes a tax upon transportation of persons without regard to destination. If it was the intent of Congress to limit the application of the tax to transportation of persons from one point to another, a more cogent reason for the expression of such an intention existed than that which induced the framers of § 3475 of the same Code, 26 U.S.C.A. § 3475, to restrict the application of the tax upon transportation of property to transportation "from one point in the United States to another". That it was the purpose of Con-

gress not to so limit the application of § 3469 is the interpretation of the Administrator charged with the enforcement of the Act. Treasury Regulations, 42 (1942 ed.), 26 C.F.R. § 130.51:

> " * * * (d) It is not necessary that the transportation be between two definite points if not otherwise exempted; a payment for continuous transportation beginning and ending at the same point is subject to the tax."

This interpretation is reasonable and in harmony with the provisions of the section.

The fact that the Treasury Department may have also recognized or even attempted to create an exemption in favor of circus or show trains, Treas.Reg. 42, § 130.54, 26 C.F.R. § 130.54(f), has no bearing upon the question here. We are not called upon to decide whether the Administrator did or did not exceed his authority in promulgating such regulation.

The exemption made by § 3469(b) of application of the transportation tax to amounts paid for transportation by boat for the purpose of fishing from such boat was intended to apply to fishing trips without regard to whether a trip was "circular," that is, from point of origin back to that point, or whether such a trip might be to a point or points of destination. If any inference as to the possible intent of Congress, germane here, is to be drawn from the fishing boat exemption, § 3469(b), such inference would not support an implication that amounts paid for circular trips, such as we have here, are to be excluded from the tax on transportation of persons imposed by § 3469 (a).

Unlike the facts under consideration by this Court in Earle v. Babler, 9 Cir., 180 F.2d 1016, the pilots were not employees of taxpayer. Nothing in this record would support a right on the part of taxpayer to discharge Mantz's pilots nor does it disclose that taxpayer paid the wages of the pilots. The circumstance that the times of departure and direction of the flights may have been as directed by appellee did not create the employee-employer relationship.

Mantz was engaged but for one purpose, to move by its airplanes employees of appellee and obviously, such movement was transportation in its ordinary sense.

Each of the above airplane flights involved the transportation of persons as that term is generally understood and as it is used in § 3469(a), Internal Revenue Code of 1939.

The judgment of the District Court is set aside and the case is remanded for entry of judgment in favor of the defendant, appellant here.