DYMOND CAB CO., Inc., et al. v. BRANSON.

No. 30674.   Dec. 1, 1942.

Rehearing Denied Dec. 15, 1942.

*131 P. 2d 1007.*

Crouch, Rhodes & Crowe, of Oklahoma City, for plaintiffs in error.

Paul W. Updegraff, of Norman, for defendant in error.

GIBSON, J.   This action was instituted in the district court of Cleveland county by W. R. Branson, hereinafter referred to as plaintiff, against the Dymond Cab Company, Ewing Gafford, and the Casualty Reciprocal Exchange, hereinafter referred to as defendants, to recover damages resulting from the collision of a truck owned and operated by plaintiff with an automobile owned by the defendant cab company and operated by Ewing Gafford. Issues were joined, the cause was tried to a jury, and a verdict was returned in favor of the plaintiff fixing the amount of recovery in the sum of $2,126 for personal injuries and the sum of $799.12 for damages to his truck. From a judgment on the verdict the defendants Dymond Cab Company and Casualty Reciprocal Exchange have appealed to this court.

Defendant Dymond Cab Company operates a taxicab business in the city of Norman. The Casualty Reciprocal Exchange is the insurance carrier of said cab company, having executed its policy in compliance with the requirements of the city ordinance. Defendant Ewing Gafford was a student in the University of Oklahoma at Norman. On May 26, 1940, defendant cab company rented one of its cabs to the said Gafford and another student under a rental agreement whereby the vehicle was to be operated by defendant Gafford as a conveyance for himself. It appears that while returning from Oklahoma City and at a point approximately eight miles north of the city of Norman, the vehicle operated by Gafford and owned by the cab company collided with the truck of plaintiff. As a result of said collision plaintiff sustained damages resulting from personal injuries and damages to his truck. No appeal has been perfected in behalf of defendant Gafford, and for the purpose of this appeal it will be assumed that the collision was the result of negligence on his part.

No contention is made that the relationship of master and servant existed between the cab company and defendant Gafford, nor that Gafford was known to be a careless or reckless driver at the time the cab was rented to him.

The sole ground upon which a recovery was had against the cab company and its insurance carrier was that liability was fixed by the terms of a city ordinance regulating the operation of taxicabs within the city of Norman. The title of that act is as follows:

"Ordinance No. 524 as Amended By

Ordinance No. 574

"An Ordinance regulating the use of taxicabs, automobiles and other vehicles carrying passengers and baggage, for hire, fixing the fare to be charged for the transportation of passengers and baggage, making provision for liability insurance or bond, providing punishment for violation thereof, and declaring an emergency."

Section 1 of the act is, in part, as follows:

"Taxicabs: The term 'taxicab' as used herein shall include all automobiles having a rated seating capacity of seven or fewer persons and used for the transportation of passengers for hire. . . ."

Section 4 of the act is, in part, as follows:

"Before any permit or license for taxicab, as herein defined shall be issued, the owner shall file with the City Clerk an insurance policy issued by an insurance company licensed to do business in this State and approved by the City Commission, providing insurance coverage for each and every taxicab owned, operated or leased by the applicant with a maximum liability of $2,500.00 for the injury or death of any one person and $5,000.00 for the injury or death of any number of persons in any one accident and a limit of maximum liability of $1,000.00 for property damage in any one account, *regardless of whether the taxicab was being driven by the owner, his servant, agent or lessee. . . ."*

We find it unnecessary to refer to the various provisions of the insurance policy as they may relate to the liability of the insurance carrier. See Utilities Ins. Co. v. Potter, 188 Okla. 145, 105 P. 2d 259.

The trial court was of the view that Gafford was a "lessee" of the cab, within the meaning of the language used in section 4 of the ordinance, and so instructed the jury. Defendants contend that in the use of the word "lessee" the lawmakers had in mind a well-known method of operating a taxicab business whereby the drivers pay the cab companies a stipulated rental for the use of the cab, and retain all fares, in excess of the rental, for themselves; that no intention is shown to attempt to regulate the business of leasing automobiles to the public to be operated by the lessees.

The question is whether or not the transaction between defendants Gafford and the Dymond Cab Company is within the stated purpose of the act, that is, the regulation of "the use of taxicabs, automobiles and other vehicles carrying passengers and baggage for hire."

In the case of State v. Dabney, 176 Ark. 1071, 5 S. W. 2d 304, the court had for consideration the question of whether or not one engaged in the business of leasing or renting automobiles was required to pay a special tax levied upon "all motor vehicles, when such vehicles are used for the transportation or delivery of persons for hire." Therein it was said:

"The undisputed testimony shows that the appellee was not engaged in the business of operating a jitney, taxicab or motorbus line, but only in renting or hiring to individuals, who applied therefor, cars of different styles and sizes, to be operated by the hirer at his own risk and discretion. Such operation of such business did not constitute appellee either a private or public carrier of passengers or his business the using of motor vehicles for the transportation or delivery of persons or passengers for hire within the meaning of the act. He was not a carrier of passengers at all, . . . . (citing authorities)."

In the case of State v. Bee Hive Auto Service Co., 137 Wash. 372, 242 P. 384, it was shown that defendants were charged with violation of a statute making it unlawful to carry on the business of carrying or transporting passengers for hire in any motor-propelled vehicles within the corporate limits of a city of the first class without procuring a permit to do so. Therein it was said:

"The question for determination, therefore, is, does the cited statute prohibit the letting of an automobile by its owner to another for that other's use in a city of the first class. That it contains no direct prohibition to that

effect must be conceded. If it prohibits the act at all, it does so by reason of the fact that it prohibits the carrying of passengers for hire in a city of the first class without complying with certain conditions, and by reason of the further fact that the letting for hire of an automobile to the use of another is to carry that other as a passenger for hire. But we cannot think the act of leasing has this result. It is true, of course, that the lessor, by the act of leasing, enters into certain obligations, so well understood as not to require enumeration here; but we think it manifest that he does not, by the act, undertake to carry any one, and much less does he become by the act either a public or a private common carrier of passengers for hire. His situation is not different in legal effect from that of the old-time occupation of livery stable keeper, who keeps teams and carriages to let for hire. No court, in so far as we are aware, has ever held such a keeper to be a common carrier of passengers, and we think a like rule must apply to the defendants in this instance."

The above-quoted authorities were cited and approved in the case of Roeske v. Lamb, 39 N. M. 111, 41 P. 2d 522, wherein the court was called upon to construe an act "Relating to the Supervision and Regulation of the Business of the Transportation by Motor Vehicles for Hire Over the Public Highways of the State of New Mexico." It was pointed out that such act had for its purpose the regulation of carriers; that a carrier is one that undertakes the transportation of persons or movable property of others for hire; that one engaged in letting passenger automobiles for hire, without drivers, was not a carrier, therefore said business was not within the regulatory provisions of the statute.

In the case of Armstrong v. Denver Saunders System Co., 84 Colo. 138, 268 P. 976, the question presented was whether or not the plaintiffs were subject to a license fee levied against the operators of "motor vehicles used in the transportation of passengers for hire operated upon the public highways of this state." Therein it was said:

"The complaint shows that plaintiffs keep automobiles for rent to persons who themselves drive them, and these are the cars which the defendant seeks to charge with this additional tax or license fee. The contract with every customer includes an agreement by him not to use the car 'as a private or public carrier of passengers for hire.' We think the plaintiffs' cars are not within the scope of the statute. The ordinary meaning of the word 'passenger' is 'a traveler by some established conveyance,' Webster. The plaintiffs' customers are bailees, not, in any ordinary use of the word, passengers; if they carry others in the rented cars, it is not for hire and they are not subject to the tax. . . ."

In the case of Lawrence v. Goddard, 124 Fla. 250, 168 So. 13, it was shown that the petitioner was the owner of a number of automobiles which he rented to others at stipulated prices; that said automobiles were driven by the hirers or lessees thereof over the public highways of the state. The question involved was whether or not the operation of such business was within the scope and intent of a regulatory provision of a Florida statute relating to the operation of motor-propelled vehicles, "used in the business of transporting persons or property for compensation over any public highway in this state; . . . With reference thereto, it was said:

"We think that one proposition, if no other, is conclusive of the determination of the questions involved in this case in favor of the defendant in error. Section 1 (e) of chapter 14764, which defines the kind of permit to be issued to 'for hire operators,' requires operators to be 'carriers' who operate automobiles 'over public highways with "for hire" tags in transporting persons or property for compensation.' It thus appears that under chapter 14764 that it is necessary, in order to bring a for hire concern within the purview of that act that it not only operate its automobile, but also undertake to transport persons or property therein for hire as a carrier. Under the plan of operation of U-Drive-It concerns they neither operate their own automobiles nor undertake to transport persons or property therein as part of their business. On the contrary, they

simply enter into a contract of bailment with an intended customer, which completely divorces\the bailor from all further control or responsibility in connection with the operation of the automobile while it is in the hands of, the bailee. See White v. Holmes, 89 Fla. 251, 103 So. 623."

Vol. 7, Blashfield Cyclopedia of Automobile Law and Practice (Perm. Ed.) § 5231, is, in part, as follows:

"Thus persons renting automobiles without drivers are not within the terms of a statute requiring a license ffor the business of transporting passengers for hire, or a statute requiring automobiles for hire to have a particular kind `of license and defining 'for hire' as meaning all motor vehicles, other than auto stages, used for the transportation of persons for which transportation remuneration of any kind is received."

Vol. 1-2, Huddy, Automobile Law (9th Ed.) § 118, is, in part, as follows:

"The business of furnishing cars on the specific order of a customer is different from the general taxicab or jitney business. The owner in such a case is not deemed to be a common carrier. It has been held that one engaged in the business of renting driverless automobiles of small seating capacity, driven by the hirer without limitation as to route, is not a carrier of passengers, either public or private, . . . ."

A taxicab company has been held to be "a common carrier." Stewart Taxi-Service Co. v. Spencer, 149 Md. 635, 132 Atl. 153. The lessors of automobiles which are to be operated by the lessees thereof are not common carriers. Hodge Drive-It-Yourself Co. v. City of Cincinnati, 123 Ohio St. 284, 175 N. E. 196, 77 A. L. R. 889.

The use of the language "vehicles carrying passengers and baggage for hire," in the title of city ordinance involved herein, discloses an intent to legislate with respect to the operation of such vehicles as "carriers." The status and liability of carriers has long been fixed in the law and bears no resemblance whatever to the status and liability of bailors of property for hire. Insofar as the transaction involved herein is concerned, the defendant cab company was a bailor and not a carrier.

We may point out further that the ordinance involved herein is a comprehensive act containing 21 sections. An examination of the entire act fails to disclose language in any of the sections thereof indicating a clear intent to legislate with respect to any subject other than the operation of taxicabs. This includes consideration of the words "leasing" and "lessee" found in section 4, supra, and relied upon to establish liability in the instant case. Obviously, said language was intended to refer to the leasing of motor vehicles to be operated as taxicabs within the city of Norman.

We therefore conclude that the contract between the cab company and Gafford was not within the regulatory provisions of the city ordinance, and that plaintiff has failed to establish liability against the said cab company and its insurance carrier.

The judgment is reversed and the cause remanded, with directions to proceed in accordance with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and OSBORN, BAYLESS, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.