**EARLE, Collector of Internal Revenue, v. BABLER et al.**

**EARLE, Collector of Internal Revenue, v. CONLEY et al. (two cases).**

**Nos. 12317–12319.**

United States Court of Appeals
Ninth Circuit.

March 13, 1950.

Theron Lamar Caudle, Asst. Atty. Gen., Elis N. Slack, A. F. Prescott, George D.

Webster and Irving I. Axelrad, Sp. Assts. to Atty. Gen., Wash., D. C., Henry L. Hess, U. S. Attorney, Victor E. Harr, Asst. U. S. Attorney, Portland, Or., for appellant.

Carl E. Davidson and Charles P. Duffy, Portland, Or., for appellees.

Before STEPHENS, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

In these actions appellees have been awarded judgments for various amounts assessed and collected from them as transportation taxes under § 3475 of the Internal Revenue Code, 26 U.S.C.A. § 3475.[1]

Appellees, who were general contractors, undertook the construction and resurfacing of certain roads and airports, which work required the transporting of bulk construction materials from stockpiles and quarries to the job sites. To carry out this transportation, appellees entered into verbal agreements with various owners of trucks for the use of their trucks on an hourly, load or yard-mile basis. The trucks were operated either by the owners or by hired drivers. The Commissioner of Internal Revenue levied the tax on the theory that the truck owner-operators and drivers were not the employees of the appellees and that the truck owners were persons engaged in the transportation of property for hire within the meaning of the statute. The district court found that all of the truck drivers, whether truck owners or not, were subject to the direction and control of appellees, not only as to the work to be performed but as to the manner of its performance; that appellees had the right to discharge drivers, whether truck owners or not, at any time.

We think the findings have ample support in the evidence and that it is established that the truck owners were not "person[s] engaged in the business of transporting property for hire," in the sense of carrying on an independent enterprise whereby they received goods at one point and provided

---

1. "(a) Tax. There shall be imposed upon the amount paid within the United States * * * for the transportation * * * of property by rail, motor vehicle, water, or air from one point in the United States to another, a tax equal to 3 per centum of the amount so paid * * *. Such tax shall apply only to amounts paid to a person engaged in the business of transporting property for hire, * * * *"

substantially all the essential equipment and services for carrying those goods to another point for delivery, in return for an over-all compensation. The trucks were released to appellees for use in any manner they wished and the drivers of the trucks worked as employees under the control and supervision of appellees.

The main fact relied upon by appellant as evidence of the truck owners' independent-contractor status is the method by which they were paid. In most instances, irrespective of whether payment was by the hour, load or yard-mile, not only gas, oil and repairs were deducted from the compensation paid for the use of the truck, but also the regular wages and "payroll insurance" (social security taxes, etc.,) of the drivers, which had been disbursed by appellees. Owners who drove their own trucks were usually paid wages which were later deducted from the truck "rental", although in a few instances driver-owners were paid a flat hourly rate for themselves and the truck without deductions. This financial responsibility for all supplies, repairs and drivers' wages caused the remuneration of the owners to vary with the efficiency of both vehicles and drivers and thus tended, it is urged, to give them the character of individual business men. Each owner, furthermore, held a permit from the Oregon Public Utilities Commission of a kind issued to operators, as distinguished from owners, of trucks on the public highway, and carried the liability insurance required of the holders of such permits.

Some of the truck owners owned several trucks, part of which they furnished to appellees while at the same time furnishing other trucks to other persons. These owners at times had men who regularly drove the trucks on the various jobs for which the trucks were hired. When the truck owners with their trucks came on the job for appellees, appellees used the drivers whom the owners brought with them, but where a truck was hired without a driver appellees obtained drivers through the union or other regular employment channels. The drivers were subject to the will and control of appellees as to how the work should be done as well as what should be done. The drivers were told where to spot their trucks for loading and unloading and what routes to take. Their times of arrival and departure were recorded and each detail of the work was supervised. The right to discharge the drivers, whether owners or not, at any time, existed. And owners and drivers were at liberty to quit at any time, there being no formal contracts among the drivers, owners and appellees. Appellees used trucks owned by them as well as hired trucks and all drivers were supervised in the same manner as were all other employees of appellees. All drivers worked regular hours and were paid the same wages, with the same deductions for social security, etc. All drivers were required to work exclusively for appellees during their period of employment and occasionally a driver would be taken off a truck and put on some other job. Some of the driver-owners testified that while driving trucks for appellees they considered themselves appellees' employees.

The actual work of hauling done under the close supervision of appellees and their representatives and the lack of control on the part of owners over where, when or how the hauling work should be performed points up the employer-employee relationship. Another important factor is the payment of overtime to owner-drivers. We think such payment is not consistent with the independent contractor idea. On the contrary, such a requirement usually exists in cases where the employer-employee status is maintained.

Appellant relies on Bridge Auto Renting Corp. v. Pedrick, 2 Cir., 174 F.2d 733, as establishing the applicability of the transportation tax under the present facts. It becomes apparent from a reading of that case that it contains factors not present here which tended to establish that the truck owner furnished substantially all the facilities for, and performed substantially all of the functions of, transporting the property. There the owners provided a payroll service through which they computed and paid all the drivers' wages and billed the lessees of the trucks for the total amount. The drivers were hired by the

owners who also negotiated with the union on behalf of the lessees as to wages and working conditions. The payroll service was formally contracted for in writing. There was evidence that both owners and lessees considered the drivers to be the employees of the owners. The trucks were leased for a term of one or more years with automatic extension for one year unless terminated by either party on sixty days notice. In the instant case they were hired on a day to day basis with a right of termination at any time. We consider this an important distinction.

The owner in John J. Casale, Inc., v. United States, Ct.Cl., 86 F.Supp. 167, also relied upon by appellant, was the employer of the drivers in every respect, having, among other things, the exclusive right to hire and discharge the drivers and the general right of direction and control over the trucks and drivers.

In United States v. Silk and Harrison v. Greyvan Lines, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, certain owners who drove their own trucks were held not to be employees of the parties for whom they did the hauling for purposes of liability for social security taxes. In the Greyvan case, unlike this case, the drivers were hired under a formal written contract and were required personally to drive their own trucks. They were paid an outright percentage of the tariff earned on the freight hauled by them, rather than being paid wages. The control over their activities exercised by Greyvan Lines was far less than the control exercised by appellees in the present case. The Greyvan drivers made much longer hauls than the drivers here and seem to have exercised independent judgment from the time of leaving with a load until their destination was reached. No record was kept of their working time. Helpers were hired by the owner-drivers for the work of loading and unloading, were under their exclusive control and were in no manner controlled by Greyvan Lines.

The independent status of the Silk drivers seems even clearer than that of the Greyvan drivers.

Appellant cites § 220 of the Restatement of Agency, which lists certain factors to be considered in determining the existence of the master-servant relationship for purposes of liability in tort under the doctrine of respondeat superior.[2] In the case of drivers who drove other than their own trucks, all of the factors listed in said § 220 would tend to indicate that they were servants. In the case of owner-drivers, each supplied his own instrumentality, the truck, (§ 220(2) (e) ), but appellees supplied the place of work. And in cases where the owner-drivers were paid for the use and driving of the truck by the job instead of the time (§ 220(2) (g) ), they were also paid wages, including overtime, on the job, which were later deducted from

2. "Who is a servant.
   "§ 220. Definition.
   "(1) A servant is a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right to control.
   "(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
   "(a) the extent of control which, by the agreement, the master may exercise over the details of the work;
   "(b) whether or not the one employed is engaged in a distinct occupation or business;
   "(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
   "(d) the skill required in the particular occupation;
   "(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
   "(f) the length of time for which the person is employed;
   "(g) the method of payment, whether by the time or by the job;
   "(h) whether or not the work is a part of the regular business of the employer; and
   "(i) whether or not the parties believe they are creating the relationship of master and servant."

the rent paid for the truck. A factual situation very similar to that of the instant case appears in Bowser v. State Industrial Accident Comm., 182 Or. 42, 185 P.2d 891, wherein the relation of employer and employee was held to exist. The overall picture presented by the facts of this case compels the conclusion that the truck owners and drivers were employees, not independent contractors.

Judgments affirmed.