297 P.2d 1099

The STATE of Arizona, and C. L. Lane, as
Superintendent of Motor Vehicles,
Appellants,

v.

SOUTHWEST LUMBER MILLS, Inc., as as-
signee of Robert D. Ramsey et al.,
Appellee.

No. 6117.

Supreme Court of Arizona.

May 22, 1956.

Robert Morrison, Atty. Gen., R. G. Lang-
made and Ronald B. Bond, Asst. Attys.
Gen., for appellants.

McQuatters & Stevenson, Flagstaff, Beer
& Seaman and C. Edwin Thurston, Phoe-
nix, for appellee.

WINDES, Justice.

Robert D. Ramsey, as the owner of cer-
tain trucks and trailers entered into a "lease
agreement" with the Southwest Lumber
Mills, Inc., whereby he leased the equip-

ment to the company upon terms which so far as pertinent will be hereinafter recited. C. L. Lane, superintendent of motor vehicles, Arizona highway department, believing that Ramsey in leasing the property to the company was operating as a contract motor carrier as defined by section 66–501, A.C.A.1939 [A.R.S. § 40–601], assessed against him the license tax and penalties imposed by the provisions of section 66–518, A.C.A.1939 [A.R.S. § 40–641]. Ramsey paid the amount assessed under protest and brought suit to recover the same. The period covered by the assessment was for the years 1947 to 1950 and including up to November 1951. There were eight other individuals with like lease agreements who were also assessed upon the same theory and each paid their respective assessments under protest and brought suit for recovery. By stipulation the cases were consolidated for trial. The court rendered judgment against the defendants State of Arizona and C. L. Lane as superintendent in favor of each respective party-plaintiff for the amounts paid together with six percent interest from the date of payment. The claims of the respective plaintiffs were assigned to the company and it was substituted as party plaintiff. The defendants appeal.

There is no dispute in the facts. The only oral testimony is the deposition of Reid Smith, one of the plaintiffs. It is stipulated that this testimony is typical of what the testimony of each of the plaintiffs would be had they testified which would be repetitious except for testimony concerning a partnership agreement between Reid and another. The company was in the sawmill and logging business and the pertinent provisions of the lease agreement were that the rent was so much per mile of operation; that the owner of the equipment was to furnish the gas, oil, tires, and other supplies necessary for its operation and at his expense keep the equipment in repair; that the lessee company had the right to insure against hazards incurred in the operation of the trucks and agreed to employ competent and careful drivers and charged the wages of the driver against the amount due the owner for use of the trucks; that it was agreed the equipment be used for hauling logs, lumber and supplies in the operation of company's business; and that the lessee was to keep the property in such continuous use as business and weather permitted. The term of the lease was one year with right of renewal by the lessee and either party had the right to cancel the same on 30 days written notice. During the last six months of the period covered by the assessment the plaintiffs and the company operated under a revised "lease agreement" varying in some respects from the former agreement but with no change sufficient to distinguish the two agreements in regard to the question presented herein.

Reid testified that he had nothing to do with the hiring or firing of the drivers; that they were not his former drivers but

had been with the company all the time; that the company had absolute control over the drivers and the trucks; and that, if at times the owner of the truck drove for the company, he could be required to drive other trucks than his own and received the union scale of wages for such services. The company paid workman's compensation on the drivers and made deductions for social security and income tax.

The crucial question presented is whether under the agreements and method of operation, the owners of the trucks were contract motor carriers. Under the provisions of section 66–501, A.C.A.1939 [A.R.S. § 40–601], contract motor carrier is defined as follows:

" 'Contract motor carrier of property' shall mean any person engaged in the transportation on any public highway by motor vehicle of property, for compensation, * * *."

We are unable to conclude that the plaintiffs were engaged in the transportation of property for compensation. They were not transporting property at all. They had no control over the movement of property nor any obligation to see that it was transported. Plaintiffs' entire obligation was to furnish the equipment and pay the expense of keeping the same in operating condition. Other jurisdictions in both the state and federal courts have reached a like conclusion on similar facts. Earl v. Babler, 9 Cir., 180 F.2d 1016; Lloyd A. Fry Roofing Co. v. Michigan Public Service Commission, 338 Mich. 544, 61 N.W.2d 783; People v. Tedesco, 18 Cal.App.2d 667, 64 P.2d 966; Dymond Cab Co. v. Branson, 191 Okl. 604, 131 P.2d 1007.

In Lloyd A. Fry Roofing Co. v. Michigan Public Service Commission, supra [338 Mich. 544, 61 N.W.2d 785], the Michigan court in holding that the lessor of equipment was not covered by the transportation act applied the principles theretofore announced in one of its former cases, People v. Hertz Driveurself Stations, Inc., 338 Mich. 139, 61 N.W.2d 113, by using the following language:

"In the Hertz case a motor vehicle registered in its name was leased to Associated Fruit & Produce Company of Flint. This vehicle was operated over the highways of the State under the complete domination and control of the lessee, except that it was maintained, insured and serviced by Hertz in its own garage. The driver was employed and paid by the lessee and had no relationship with Hertz. He received all of his instructions from the lessee and the property transported was a part of the lessee's commercial enterprise in dealing with fruits and vegetables. We held that Hertz did not operate a motor vehicle for the transportation of persons or property for hire on a public highway, but merely leased its equipment to another."

In People v. Tedesco, supra [18 Cal.App.2d 667, 64 P.2d 967], the California court said:

" * * * one, although in the business of transporting property by trucks on the highway, would not be a highway carrier, so far as the operation of particular trucks was concerned, if they were hired to and were being operated by another. It is what the owner does, not what his trucks are doing, that determines whether or not he is a highway carrier."

In Earl v. Babler, supra, there had been assessed against truck owners various amounts as transportation taxes under section 3475, Internal Revenue Code, 26 U.S. C.A. § 3475. This section provided for a tax upon amounts paid to a person engaged in the business of transporting property for hire. The owners had an agreement with a contractor for the use of their trucks on an hourly or a yard-mile basis. The commissioner of internal revenue levied the tax on the theory that the owners were engaged in the transportation of property for hire. The facts as related by the court which prompted the commissioner to rule that the owners were transporting property for hire were that the costs for gas, oil and repairs to the trucks and the amount of wages paid to drivers, including social security taxes, etc., were deducted from the compensation paid for the use of the trucks; that the owners held permits from the Oregon Public Utilities Commission issued to them as operators of trucks on the public highway and carried the liability insurance required of such holders; that the contractors sometimes used drivers employed by the owners to bring the trucks to the job, sometimes employed the owners as drivers and at other times obtained drivers through unions or other employment channels; and that the contractors had control as to how the work should be done as well as what should be done. The contractors used the trucks in transporting bulk construction materials from stockpiles and quarries to job sites. In ruling that the owners were not liable for the tax the court said [180 F.2d 1017]:

"The actual work of hauling done under the close supervision of appellees and their representatives and the lack of control on the part of owners over where, when or how the hauling work should be performed points up the employer-employee relationship."

We are of the view, therefore, that the owners of these trucks were not engaged in the transportation of property for compensation.

The defendants say that the court should not have allowed plaintiffs six percent interest from the date of payment of the tax. This question has been decided adversely to defendants' contention. State Tax Commission v. United Verde Extension Mining Co., 39 Ariz. 136, 4 P.2d 395.

The defendants, without making the contention in the trial court, urge here that

in the event we hold plaintiffs not liable for the tax levied herein, we render judgment against plaintiffs for the tax that would become due under the excise revenue act, section 73–1303(f) (2), A.C.A.1939 [A.R. S. §§ 42–1309, 42–1314]. It is novel and interesting to receive a request to render judgment in favor of the state for a purported tax when the same has never been assessed by the authorities and no issue has been raised concerning the same in the trial court.

The judgment is affirmed.

LA PRADE, C. J., and UDALL, PHELPS and STRUCKMEYER, JJ., concur.