388 P.2d 427

STATE of Arizona and Clyde Killingsworth,. as Superintendent of Motor Vehicles, Arizona State Highway Commission, Appellants,

v.

TEXAS INDEPENDENT OIL CO., Inc., Appellee.

No. 7322.

Supreme Court of Arizona.

In Division.

Jan. 22, 1964.

Robert W. Pickrell, Atty. Gen., for appellants.

S. W. Langmade, Phoenix (deceased), for appellee.

BERNSTEIN, Justice.

Plaintiff oil company sued to recover a tax penalty paid under protest in 1957 to the Superintendent of Motor Vehicles pursuant to A.R.S. §§ 28-1501 and 28-1506. The case was heard by the court without a jury and judgment was rendered in favor of the plaintiff-appellee, in the amount of the penalty. The state appeals the judgment and plaintiff filed a cross appeal urging this court to award interest to the plaintiff on the amount recovered in the lower court.

Plaintiff is an oil company engaged in distributing motor vehicle fuel within the State of Arizona. As such, it is subject to pay a tax of five cents per gallon on fuel imported into this state, A.R.S. § 28-1501. Under A.R.S. § 28-1502 the tax accruing in any calendar month must be paid by the twenty-fifth day of the next succeeding calendar month. Failure to pay the tax when due results in a 25% penalty under A.R.S. § 28-1506.

The facts are not disputed. The controversy centers around three separate "tenders," or pipeline deliveries of fuel which were made in 1957 between 11:50 A.M. Pacific Time, April 29th and 11:10 P.M. Pacific Time, April 30.

Plaintiff argues that accurate measurement cannot be made until the fuel has settled in the tank and that consequently measurement could not be made until after midnight April 30, which was May 1, 1957. This measurement went on the books for the month of May rather than April, in accordance with the usual bookkeeping procedures of the plaintiff, and the tax was paid as a May "tender." The Motor Vehicle Department imposed this penalty for failure to report and pay tax on the "tender" as having been received in April, since the fuel was in plaintiff's tanks before midnight, April 30, 1957.

Plaintiff's position is that since the fuel was not susceptible of accurate measurement until May, owing to turbulence, the "tenders" received on the last days of April were properly included in its May report. The state contends, however, that the initial meter reading, taken as the fuel is pumped, is the measurement contemplated by the statute which provides for the possibility of error by allowing a 1% reduction in the amount of tax otherwise due, on account of shrinkage. A.R.S. § 28-1501 provides:

"Every distributor shall pay to the state, in addition to all other taxes provided by law, a license tax of five cents for each gallon of motor vehicle fuel possessed, refined, manufactured, produced, blended or compounded in this state by the distributor, or imported by the distributor, whether in the original package or container in which it was imported or otherwise. In the computation of the tax, one per cent of the tax otherwise due shall

be deducted before payment for shrinkage."

It also relies on a regulation, Order 57, promulgated by the Motor Vehicle Division which provides in part that:

"* * * a copy of the pipeline carrier's delivery ticket, as approved by the vehicle superintendent, is designated as the consignee report to be used by distributors receiving shipments of motor vehicle fuel via pipeline carrier."

* * *

"It is further ordered that motor vehicle fuel shall be deemed 'possessed' and/or 'imported' under Sections 28–1501, 28–1515, and 28–1503, A.R.S., when delivered by the pipeline carrier into the terminal storage facilities of the distributor in Arizona."

There is nothing in Chapter 28, A.R.S. which indicates that the distributor must calculate his tax on the basis of the meter reading taken as the fuel is delivered. However, the regulation, Order 57, requires that the delivery ticket, which is stamped with the amount of fuel delivered as registered on the metering device, be used for assessment of the tax. This provides the Motor Vehicle Division with a uniform basis for taxation and enables it to avoid controversy over adjustments made by each individual distributor. The plaintiff does not question the reasonableness of the Motor Vehicle Division's regulation, Order 57.

What the plaintiff-appellee does contend is that the application of Order 57 under the circumstances works an unreasonable hardship.

This is not a case such as discussed in General Petroleum Corp. v. Smith, 62 Ariz. 239, 157 P.2d 356, 158 A.L.R. 364, where there is an excusable delay in payment, and the court may exercise its equitable power to abate the tax penalty under meritorious conditions. No discretion or weighing of circumstances is involved. The mistake here was made, not by the taxpayer, but by the Superintendent of Motor Vehicles.

It follows that the decision below refunding the penalty must be affirmed, but the case must be remanded for allowance of interest at 6% to the plaintiff, from the date of the payment of the penalty. State Tax Commission v. United Verde Extension Mining Co., 39 Ariz. 136, 4 P.2d 395; State v. Southwest Lumber Mills, Inc., 80 Ariz. 357, 297 P.2d 1099.

On its face Order 57 says nothing about a midnight cut off, and the plaintiff had no warning that there could be any objection to its custom of closing its office at 5 o'clock and reporting deliveries by pipe line (necessarily a 24 hour a day operation) made after 5 o'clock, as of the following day. The establishment of a strict midnight cut off would be unreasonable and invalid. The Superintendent cannot object if the taxpayer adopts the office hours which are

customary throughout the state, and used by the state for its own offices. A.R.S. § 38–401. If offices are legally closed when filings or reports should be made, the action may properly be taken on the first following business day. Moody v. Vans Gila Gin Co., 89 Ariz. 280, 361 P.2d 541.

■■ The Attorney General is correct in contending that a taxpayer may not select an arbitrary closing hour, for the purpose of deferring taxes, but that is not what was done here. The Superintendent is not bound by the taxpayer's choice of a closing hour, unless the hour chosen, as here, is a reasonable one, justified by the customs and statutes of the state. Taxing officials are given the power to make regulations only in aid of the collection of the taxes levied by the legislature. They may not establish traps for taxpayers, or disregard established business reporting and accounting customs where they correctly reflect income or the receipts in money or property which are to be taxed. Hagar v. Helvering, 308 U.S. 389; Moore v. O. S. Stapley Co., 74 Ariz. 174, 245 P.2d 947. In State Tax Commission v. Miami Copper Co., 74 Ariz. 234–243, 246 P.2d 871, 877, this court said:

"In this jurisdiction we are firmly committed to the doctrine that doubtful tax statutes should be given a strict construction against the taxing power, giving due regard to the expression of the legislative intent; and that the courts will not 'strain, stretch and struggle' to uncover hidden taxable items."

■ Nor can the Superintendent, by regulation strain, stretch and struggle to uncover hidden taxable penalties.

The judgment below is affirmed and on appellee's cross-appeal, the case is remanded for the award of interest in accordance with the views expressed herein.

UDALL, C. J., and STRUCKMEYER, J., concur.