880 P.2d 1083

**RYDER TRUCK RENTAL, INC., a Florida corporation, Plaintiff–Appellee,**

v.

**CITY OF PHOENIX, a municipal corporation, Defendant–Appellant.**

No. 1 CA–TX 92–0008.

Court of Appeals of Arizona, Division 1, Department T.

Oct. 28, 1993.

Reconsideration Denied Dec. 17, 1993.

Review Withdrawn by stipulation of the parties Oct. 4, 1994.

Teilborg, Sanders & Parks, P.C. by J. Clayton Berger, Phoenix, for plaintiff-appellee.

Roderick G. McDougall, Phoenix City Atty. by Sandra K. McGee, Asst. City Atty., Phoenix, for defendant-appellant.

## OPINION

CLABORNE, Judge.

The City of Phoenix appeals from summary judgment refunding privilege taxes of $265,094.21 to Ryder Truck Rental, Inc., on its gross receipts from truck rental business originating in Phoenix between July 1983 and November 1986, 172 Ariz. 490, 838 P.2d 829 (1992). The City raises two issues on appeal:

(1) Whether Ariz.Rev.Stat.Ann. ("A.R.S.") section 28–1599.05(I) (1989) exempted Ryder's Phoenix truck rental income from the City's privilege tax on gross income from the business activity of leasing or renting tangible personal property for a consideration;

(2) Whether the tax court erred in awarding Ryder pre-judgment interest on the amount refunded.

We have jurisdiction pursuant to A.R.S. section 12–2101(B) (Supp.1992).

### · FACTS

The parties entered into a factual stipulation. Throughout the period July 1983 through November 1986, Ryder engaged in the business of leasing, from within the City of Phoenix, trucks without drivers to businesses and individuals. All Ryder's trucks were "motor vehicle" as defined by A.R.S. section 28–1599(5) (1989) or "lightweight motor vehicle" within A.R.S. section 28–1599(3) (1989). All were registered with the Arizona Department of Transportation ("Department") pursuant to A.R.S. section 28–1599.-01(A)(2) (1989).

Throughout the audit period, Ryder was licensed as a "motor carrier" by the Department under A.R.S. section 28–1599.01. It maintained in force a motor carrier tax bond with the Department's Motor Vehicle Division. See A.R.S. § 28–1599.04 (1989). Ryder obtained cab cards for each of its motor vehicles and lightweight motor vehicles. It reported and paid the applicable motor carrier tax or fee on each. See A.R.S. §§ 28–1599.01(E) and 28–1599.05(B) and (C). Ryder held a Phoenix privilege tax license issued in connection with its truck rental business.

Ryder entered into short-term, long-term, and one-way leases with its customers, who paid both time and mileage charges. Ryder's lease customers controlled the operation of each leased truck during the rental periods. Under its form lease agreements, Ryder agreed to pay state motor vehicle license fees, personal property taxes, vehicle inspection fees, and "any taxes resulting from the operation and use of the [truck] including mileage taxes, ton mileage taxes, highway or bridge tolls."

The City audited Ryder for the period July 1983 through November 1986. On July 31,

1987, the City assessed Ryder privilege taxes of $322,220.99, of which $253,018.57 represented taxes on under-reported personal property rental income pursuant to Phoenix City Code section 14–2(a)(8) (Supp. Jan. 31, 1982). Ryder pursued its administrative remedies before the City's finance division. In a ruling of March 18, 1988, a finance division hearing officer upheld the City's privilege tax assessment on Ryder's income from the leasing of trucks. An adjusted assessment was issued. On May 20, 1988, Ryder paid the City $265,094.21 under protest.

### PROCEDURE BELOW

Ryder filed this action in the superior court pursuant to A.R.S. section 9–491 (1990) and Phoenix City Code section 14–575 (Supp. June 30, 1990). The City moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Arizona Rules of Civil Procedure 12(b)(6) (1987). While the motion was pending, the action was renumbered and transferred to the newly-created Arizona Tax Court. *See* A.R.S. §§ 12–161 through 174 (1992).

The tax court denied the City's motion to dismiss. The parties filed cross motions for summary judgment. On November 30, 1989, the tax court granted summary judgment for Ryder, stating "pursuant to A.R.S. § 12–171, the Court proposes to publish an opinion setting forth the reasons for the decision just announced." The tax court awarded Ryder

attorney's fees of $4,042.50, and ruled that Ryder was entitled to prejudgment interest.

On May 18, 1990, the City filed an "objection to entry of judgment" in which it requested that the tax court delay the entry of formal judgment until after it had filed its written opinion. Neither an opinion nor a formal judgment was filed during the succeeding twenty-three months. On April 14, 1992, the parties filed a stipulation by which the City withdrew its objection to the entry of judgment and both parties withdrew "any request that the court publish a written opinion pursuant to A.R.S. § 12–171." The parties lodged and jointly requested the tax court to enter a final judgment.

■ The tax court entered judgment on April 22, 1992. The City timely appealed. During the briefing of this appeal, the tax court filed its written opinion.[1] *Ryder Truck Rental, Inc. v. City of Phoenix,* 172 Ariz. 490, 838 P.2d 829 (Tax Ct.1992).

### ANALYSIS

APPLICABILITY OF A.R.S. SECTION 28–1599.-05(I) EXEMPTION TO PHOENIX PRIVILEGE TAXATION OF GROSS INCOME FROM RENTING TRUCKS

*The Pertinent Statutes and Ordinances*

Effective July 1, 1982, the Arizona Legislature adopted A.R.S. sections 28–1599 through 28–1599.22, imposing motor carrier taxes and lightweight motor vehicle fees.[2] 1981 Ariz. Sess.Laws ch. 207, § 3.[3] A.R.S. section 28–

---

1. The City contends that the tax court lacked jurisdiction to issue an opinion after the notice of appeal was filed because the tax court was divested of its jurisdiction on any action involving the subject matter of the appeal, citing *Continental Casualty Co. v. Industrial Comm'n,* 111 Ariz. 291, 528 P.2d 817 (1974), and *State v. O'Connor,* 171 Ariz. 19, 827 P.2d 480 (App.1992). The tax court's unique authority to file written opinions comes from A.R.S. section 12–171: "Decisions of the tax court which the court finds are of general public interest shall be published and distributed in the same manner as provided for the publication and distribution of the opinions of the supreme court." A.R.S. section 12–171 establishes no time limit for the filing of a tax court opinion. The tax court's opinion here does not affect the rights of either party, but merely explains the reasoning on which it previously ruled on the merits. The opinion could neither negate this

court's decision nor frustrate the appellate process. *See State v. O'Connor,* 171 Ariz. at 22, 827 P.2d at 483. Accordingly, the tax court did not exceed its jurisdiction in filing its opinion during the pendency of this appeal.

2. A.R.S. sections 28–1599 *et seq.* replaced former A.R.S. sections 40–601 through 40–701, repealed effective July 1, 1982, by 1979 Ariz.Sess.Laws ch. 203, § 11. The repealed statutes authorized and required the Arizona Corporation Commission to regulate intrastate common and contract motor carriers, and imposed state gross receipts taxes to be collected by the Arizona Department of Transportation.

3. A.R.S. sections 28–1599.14 through 28–1599.-21, governing tax liens and collection procedures, were repealed by 1983 Ariz.Sess.Laws ch. 138, § 2.

1599(5) defines "motor vehicle" as "any self-propelled motor driven vehicle in excess of twenty-six thousand pounds declared gross vehicle weight subject to vehicle registration...." Section 28–1599(3) defines "lightweight motor vehicle" as "any self-propelled motor driven vehicle of more than twelve thousand pounds declared gross vehicle weight but less than twenty-six thousand one pounds declared gross vehicle weight, subject to vehicle registration...." Section 28–1599(4) defines "motor carrier" as "any person who operates or causes to be operated a motor vehicle on any public highway." A.R.S. section 28–1599.05(B) imposes "against each motor vehicle of a licensed motor carrier a motor carrier tax based on its weight pursuant to section 28–206 and the miles travelled on the public highways within this state." Subsection B establishes separate per-mile tax rates for thirteen defined weight classes between 26,001 and 80,000 pounds. Subsection C sets fixed fees for each of seven weight classes between 12,001 and 26,000 pounds.

A.R.S. section 28–1599.01(A) requires any person who registers a "motor vehicle" in Arizona to obtain a motor carrier tax license before operating it on the public highways. The license is to be obtained in the name of the motor vehicle registrant, except that the registrant and any motor vehicle lessee may agree in writing that the lessee will include the motor vehicle under its own motor carrier tax license. A.R.S. section 28–1599.04 requires motor carriers to furnish to the Director of the Department of Transportation bonds conditioned on the motor carrier's payment of all motor carrier taxes before delinquency, subject to limited exceptions.

Most importantly for purposes of this case, A.R.S. section 28–1599.05(I) provides:

> Payment of the motor carrier tax by a motor carrier or a person who operates a lightweight motor vehicle shall exempt such motor carrier or lightweight motor vehicle operator from any transaction privilege tax or any similar tax imposed by any taxing authority within this state. Except as provided in this article, no other taxing authority in this state may impose a transaction privilege tax or any similar tax

based on the gross proceeds of sales or gross income from sales derived from either:

> (1) A motor carrier's use on the public highways in this state.

> (2) A person's use of a lightweight motor vehicle on the public highways in this state.

At all material times, Phoenix City Code section 14–2(a)(8) imposed privilege taxes on persons on account of their gross income or gross receipts from the business activity of "[l]easing or renting tangible personal property for a consideration ..." from locations within Phoenix.

*Ryder's "Motor Carrier" Status*

The City contends Ryder cannot claim exemption from Phoenix privilege taxation pursuant to A.R.S. section 28–1599.05(I) because as a truck lessor it does not qualify as a "motor carrier" or "person who operates a lightweight motor vehicle." The City asserts that Ryder plainly does not "operate" any of the trucks it leases. Invoking the principle that exemptions from taxation are to be narrowly construed against the taxpayer, *Ebasco Serv., Inc. v. Arizona State Tax Comm'n*, 105 Ariz. 94, 459 P.2d 719 (1969), the City assails the proposition that a truck lessor "causes" its truck "to be operated" on the public highways, and argues that this language must be interpreted to comprehend only persons who operate trucks directly or through employees or agents.

The City discounts the significance of those portions of A.R.S. section 28–1599.-01(A) that require truck lessors who register their vehicles to obtain motor carrier tax licenses, and of A.R.S. sections 28–1599.05(B) and (C) and 28–1599.06, which require motor carrier tax licensees to report and pay motor carrier taxes periodically and pay fixed fees on lightweight motor vehicles when registered. The City points out that A.R.S. section 28–1599.05(B) imposes the motor carrier tax directly against licensed motor carriers' motor vehicles. It argues that by compelling lessors themselves to obtain motor carrier tax licenses, cab cards, and tax payment bonds, the statutes seek only to require them to act as collection agents to ensure payment

of motor carrier taxes generated by lessees' use of leased trucks on the highways.

If the definition in section 28–1599(4) was the only clue to the legislature's intent on this point, we would agree with the City that a truck lessor is not a "motor carrier" entitled to invoke the exemption provided by section 28–1599.05(I).[4] Here, however, a number of considerations militate for the view that the legislature intended a broader scope for "motor carrier" than the ordinary meaning of its definition might suggest.

The current motor carrier tax provisions supplanted the former gross receipts license tax on common and contract motor carriers provided by former A.R.S. sections 40–641 *et seq.* The definition of these terms in A.R.S. section 40–601(A) centered around persons "engaged in the transportation on any public highway by motor vehicle" of passengers or property, and did not expressly include lessors of such vehicles. In *State v. Southwest Lumber Mills,* 80 Ariz. 357, 297 P.2d 1099 (1956), the Arizona Supreme Court held that truck lessors who retained no control over their lessees' use of leased trucks were not "contract motor carriers of property" within former A.R.S. section 40–601(A)(7), and therefore were not subject to the tax. The court stated:

> We are unable to conclude that the plaintiffs were engaged in the transportation of property for compensation. They were not transporting property at all. They had no control over the movement of property nor any obligation to see that it was transported. Plaintiffs' entire obligation was to furnish the equipment and pay the expense of keeping the same in operating condition.

80 Ariz. at 359, 297 P.2d at 1100. *Accord Mecham Pontiac Corp. v. Williams,* 94 Ariz. 144, 382 P.2d 558 (1963); *Thorneycroft v.*

*Emery Air Freight Corp.,* 122 Ariz. 408, 595 P.2d 200 (App.1979).

In 1960, the legislature disagreed with *State v. Southwest Lumber Mills.* See 1960 Ariz.Sess.Laws ch. 115, § 3. The Legislature added to the definition of "contract motor carrier of property" this language: "[F]or the purpose of taxation, the owner of any motor vehicle exceeding 6,000 pounds who leases it to a person other than one already subject to motor carrier license taxation." *See* former A.R.S. § 40–601(A)(7). We agree with the tax court's opinion:

> When the court found in *Southwest Lumber* that lessors were not contract motor carriers as the statute then existed, the legislature quickly reacted by adding lessors to the definition. Nothing indicates that the legislature's intent has changed since that revision.
>
> When the current A.R.S. § 28–1599(4) was adopted, the legislature did delete the cumbersome language in A.R.S. § 40–601(A)(7) that specifically referred to lessors, licensors, and those who by any other arrangement permitted the use of a vehicle by another. However, it added the "causes to be operated" language in its place. Lessors and licensors do not "operate" their motor vehicles but they do "cause" their vehicles to be operated. The current A.R.S. § 28–1599(4) says in three words what it took the old A.R.S. § 40–601(A)(7) more than fifteen to say.

*Ryder Truck Rental,* 172 Ariz. at 496, 838 P.2d at 835.

A.R.S. section 28–1599.01(A) confirms this view. Under subsections (A)(1) and (A)(2), whenever a motor vehicle is registered in Arizona by a resident, by a nonresident, or in proportion to its percentage of total use on Arizona public highways, it is the person who registers the vehicle who is required to obtain a motor carrier tax license for it. The

---

4. *See generally United States v. LaTuff Transfer Serv., Inc.,* 95 F.Supp. 375 (D.Minn.1950) (question whether the truck lessor was "carrier" required to obtain certificate of public convenience and necessity depended on whether it furnished transportation service rather than furnishing vehicle to shipper for independent operation); *People v. Tedesco,* 18 Cal.App.2d 667, 668, 64 P.2d 966, 967 (1937) ("It is what the owner does, not what his trucks are doing, that determines whether or not he is a highway carrier"); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, *aff'g.* 185 S.W.2d 133 (Tex.Civ.App.1945) (truck lessees who held themselves out and operated as motor carriers of freight for compensation, not truck owner-lessor, were motor carriers subject to gross receipts tax).

motor vehicle's "operator" obtains the motor carrier tax license pursuant to subsection (A)(3) only in situations not covered by either subsections (A)(1) or (A)(2). Significantly, a motor vehicle lessor who registers a vehicle is relieved of the obligation to obtain a motor carrier tax license for that vehicle only when the lessee itself has a motor carrier license and agrees with the lessor to include the vehicle under the lessee's license. A.R.S. § 28–1599.01(A)(2).

■ The overall motor carrier tax licensing scheme adopted by the legislature in A.R.S. section 28–1599.01(A) therefore quite clearly includes motor vehicle lessors within the class of "motor carrier" as that term is used in A.R.S. sections 28–1599 through 28–1599.13.

We agree with the tax court that "[t]he reference to lessors in A.R.S. section 28–1599.01(A)(2), in connection with the definition of motor carrier in A.R.S. section 28–1599(4), reflect[s] a comprehensive legislative scheme to include lessors as motor carriers subject to the motor carrier tax." *Ryder Truck Rental,* 172 Ariz. at 497, 838 P.2d at 836.

*Scope of A.R.S. section 28–1599.05(I) Exemption*

The City further contends that even if Ryder qualifies as a "motor carrier," A.R.S. section 28–1599.05(I) must be construed to exempt only transaction privilege or similar excise taxes based on gross income derived from a person's use of a "motor vehicle" or "lightweight motor vehicle" on Arizona's public highways, and not privilege taxes based on gross income from the distinct business of leasing personal property for a consideration. In other words, Ryder was in the business of leasing, not transportation.

The tax court agreed with Ryder that it was exempt from the City's privilege tax on leasing revenues by force of the first sentence of subsection (I) alone. 172 Ariz. at 497–99, 838 P.2d at 836–38. We, however, do not. That sentence, added by 1983 Ariz. Sess.Laws ch. 42, section 4, is incapable of independent application, because it nowhere describes or restricts the receipts on which

state or local transaction privilege taxation is precluded. As the City correctly points out, literal application of that lone sentence would exempt a motor carrier from any transaction privilege tax, whether or not related to the business activity that rendered it liable for state motor carrier taxes. For example, a motor carrier would be exempt from state and local taxation not only on its revenues from transporting goods, but also on its gross income from separate retail sales of boxes, packing tape, and other supplies for moving personal household goods, and fully depreciated used trucks or trailers from inventory.

We agree instead with the City's contention that the first sentence of subsection (I) must be read and interpreted together with the second. Indeed, the legislative history of 1983 Ariz.Sess.Laws ch. 42 strongly indicates that this is what the legislature intended from the start. Before the 1983 amendment, this was the full text of subsection (I):

> Except as provided in this article, no other taxing authority in this state may impose a transaction privilege tax or any tax based *on the gross receipts derived from a motor carrier's use on the public highways in this state.*

(Emphasis added.) This language plainly limited the preemptive scope of the statute solely to taxes calculated on receipts from using motor vehicles to transport goods or passengers on the states' highways.

That version of subsection (I) remained unchanged in HB 2071 as originally introduced in the House of Representatives in 1983. As passed by the House Committee on Transportation on February 1, 1983, however, subsection (I) was amended as follows:

> Except as provided in this article, no other taxing authority in this state may impose a transaction privilege tax or any SIMILAR tax based on the gross ~~receipts~~ PROCEEDS OF SALES OR GROSS INCOME FROM SALES derived from EITHER:
>
> (1) A motor carrier's use on the public highways in this state.
>
> (2) A PERSON'S USE OF A LIGHTWEIGHT MOTOR VEHICLE ON THE PUBLIC HIGHWAYS IN THIS STATE.

PAYMENT BY A MOTOR CARRIER OR LIGHTWEIGHT MOTOR VEHICLE OF THE MOTOR CARRIER TAX SHALL EXEMPT SUCH MOTOR CARRIER OR LIGHTWEIGHT MOTOR VEHICLE FROM ANY TRANSACTION PRIVILEGE TAX OR ANY SIMILAR TAX IMPOSED BY ANY TAXING AUTHORITY WITHIN THE STATE.

The minutes of the House Committee on Transportation meeting of February 1, 1983, reflect that Representative Jewett, chair of the subcommittee assigned to review HB 2071, said of these amendments: "Further changes make explicit the exemption from transaction privilege taxes or similar tax, of a motor carrier or lightweight vehicle."

After HB 2071 passed the House of Representatives as amended, the Senate research staff prepared a fact sheet dated March 15, 1983, on the House Engrossed text. It stated in part:

> House Bill 2071 also clarifies the motor carrier tax responsibilities for operators of lightweight motor vehicles. This legislation provides that lightweight motor vehicles are subject to the motor carrier (ton-mile) tax, but are exempt from any tax on gross proceeds of sales or gross income from sales related to the vehicle's use. This provision is very similar to SB 1231, which passed the Senate earlier this session. The sales tax exemption for lightweight motor vehicles is effective retroactively to July 1, 1982, to coincide with the effective date of the motor carrier tax.

Two days later, on March 17, 1983, the Senate Committee on Transportation considered a proposed amendment to HB 2071 that effectively moved the last sentence of subsection (I) in the House Engrossed text, with minor changes, to the beginning of that subsection. Subsection (I) now provided:

> PAYMENT OF THE MOTOR CARRIER TAX BY A MOTOR CARRIER OR A PERSON WHO OPERATES A LIGHTWEIGHT MOTOR VEHICLE SHALL EXEMPT SUCH MOTOR CARRIER OR LIGHTWEIGHT MOTOR VEHICLE OPERATOR FROM ANY TRANSACTION PRIVILEGE TAX OR ANY SIMILAR TAX IMPOSED BY ANY TAXING AUTHORITY WITHIN THIS STATE. Except as provided in this article, no other taxing authority in this state may impose a transaction privilege tax or any SIMILAR tax based on the gross ~~receipts~~ PROCEEDS OF SALES OR GROSS INCOME FROM SALES derived from EITHER:
>
> (1) A motor carrier's use on the public highways in this state.
>
> (2) A PERSON'S USE OF A LIGHTWEIGHT MOTOR VEHICLE ON THE PUBLIC HIGHWAYS IN THIS STATE.

As thus amended, HB 2071 passed the Senate Committee on Transportation. It was later adopted by the Senate and House of Representatives and signed into law. 1983 Ariz.Sess.Laws ch. 42.

[3] This history demonstrates that throughout the legislative process, the sentence that now begins subsection (I) was viewed not as an expansion of the existing limited exemption, but rather as a clarification of it. The original version of that language was first tacked onto the end of subsection (I), signalling its function as an elaboration on the exemption whose scope was already established by the existing language of subsection (I)—state and local transaction privilege taxes on gross income derived from using motor vehicles or lightweight motor vehicles on the public highways. The Arizona Senate's research staff expressly called to the Senators' attention that the bill exempted motor carriers from "any tax on gross proceeds of sales or gross income from sales *related to the vehicle's use.*" (Emphasis added.) The final reconfiguring of subsection (I) merely eliminated the structural awkwardness of the initial amended version by changing the order of the two sentences. We conclude that what is now the first sentence of subsection (I) is controlled by the plain scope of the second sentence, and therefore applies to exempt motor carriers or lightweight motor vehicle operators only from transaction privilege or other excise taxes based on gross income derived from the business of using "motor vehicles" or "lightweight motor vehicles" on Arizona public highways. Phoenix City Code section 14–2(a)(8) imposed no such tax.

██ The corresponding state transaction privilege taxing provisions buttress this analysis. If Ryder's expansive interpretation

of A.R.S. section 28–1599.05(I) was correct, then one would naturally expect the state transaction privilege taxing scheme to exempt persons who pay Arizona motor carrier taxes from all state transaction privilege taxes as well, including those on the business of renting personal property. *But they do not.* While A.R.S. section 42–1310.02(A)(1) expressly excludes the business of "transporting for hire persons, freight or property by motor carriers or lightweight motor vehicles subject to a tax under Title 28, ch. 9, art. VI [A.R.S. section 28–1599 *et seq.*]" from the transporting classification, A.R.S. section 42–1310.11 does not exclude that business from the personal property rental classification. A.R.S. § 42–1310.11(A).[5] The gross income of motor vehicle and lightweight motor vehicle lessors from truck rentals is thus fully subject to the state transaction privilege tax on the business of renting personal property for a consideration. For that reason, contrary to Ryder's contention, A.R.S. section 28–1599.05(I) cannot reasonably be interpreted at the same time to exempt such income from local transaction privilege taxation.

## CONCLUSION

The tax court correctly held that Ryder qualified as a "motor carrier" within A.R.S. section 28–1599 *et seq.,* but erred in determining that A.R.S. section 28–1599.05(I) exempted its "motor vehicle" leasing income from Phoenix privilege taxation of income from leasing or renting tangible personal property for a consideration under City Code section 14–2(A)(8).

The judgment is reversed. The opinion of the tax court is vacated.[6]

WEISBERG, P.J., and GARBARINO, J., concur.

---

**5.** A.R.S. section 42–1310.11(B)(1) deducts from motor vehicle lessors' tax base all reimbursements by their lessees for certain motor vehicle fees and taxes separately identified and billed by the lessor to the lessee. Subsection (B)(3) similarly deducts from the tax base motor vehicle lessors' sales of motor vehicle fuel and use fuel that is taxed under A.R.S. sections 28–1501 *et seq.* and 28–1551 *et seq.* No deduction is allowed for motor carrier taxes paid by the lessor under A.R.S. section 28–1591 *et seq.,* whether or not passed through to its lessees.

**6.** Because of the disposition of this case, we need not address the pre-judgment interest issue.